LEE *v.* STATE
(Three Appeals in One Record)
[No. 14, October Term, 1951.]

*Decided November 1, 1951.*

The cause was argued before MARBURY, C. J., and DELAPLAINE, COLLINS, GRASON, HENDERSON and MARKELL, JJ.

*Henry M. Siegel* and *Maurice T. Siegel* for the appellant.

*Robert M. Thomas, Assistant Attorney General,* with whom were *Hall Hammond, Attorney General, Anselm Sodaro, State's Attorney for Baltimore City,* and *Charles E. Orth, Jr., Assistant State's Attorney,* on the brief, for the appellee.

MARBURY, C. J., delivered the opinion of the Court.

This is an appeal from a judgment of the Criminal Court of Baltimore which, sitting without a jury, had found the appellant guilty on the fifth count of each of three indictments charging him with the unlawful possession of records and numbers drawn in a lottery on

three different days. He was fined $500.00 and costs in one case, $500.00 and costs in another "consecutive" with the first, and fined $1,000.00 and given six months in the Maryland House of Correction in the third.

The questions presented are (1) whether there was error in admitting in evidence the search warrant under which the evidence was secured when the affidavit on which that warrant was predicated was not identified and was not offered or admitted in evidence; (2) whether the facts related in the affidavit and application constitute sufficient probable cause for the issuance of the warrant; and, (3) whether the evidence produced at the trial was sufficient to warrant a verdict of guilty in two of the cases, in one of which the offense was allegedly committed on January 1, 1951, and the other in which the offense was allegedly committed on January 8, 1951.

Before pleading, and before trial, appellant filed a motion to quash the search warrant, and this motion was denied. It is apparent, therefore, that the court which actually heard the evidence at the trial had already had before it the affidavit and the warrant, and had passed upon them. The affidavit itself is not evidence of anything. Its purpose is to enable the officer to get a search warrant in a suspected case, and thereby to secure evidence which can be properly presented at the trial. The facts shown in the affidavit may not even be put in evidence at all in the case, and, in general, they are not so offered because they are required simply to be more than possibility, but not as much as proof. If the State had proof, it would not be necessary to have the search warrant. There is no requirement, therefore, that either the affidavit or the search warrant be put in evidence in a trial, unless the offered evidence is objected to on the ground that the affidavit is insufficient and the search warrant is bad. In such a case, when an objection is made that the evidence to be introduced was procured by an illegal search, the court has to rule upon the question whether the search was illegal, and therefore has to have before it the affidavit and the warrant.

In the case at bar, however, the court had these papers before it prior to the trial, and, therefore, it is non-sensical to say that there is any error in their not being formally offered in evidence during the trial.

On the second question, whether the affidavit is sufficient, the facts alleged are that two of the officers noted the appellant double-parked on Light Street, near Water Street, and noticed that the appellant entered Manny Berg's Turf Bar between 11:30 and noon on January 2, 1951. When he came out of the bar, after being in there about ten minutes, he was putting a slip of white paper and a pencil and some bank notes in his pocket. As he was getting into his automobile, a man came out of the bar and called him by name. He stopped, the man went over to the automobile, and, after a short conversation, appellant opened the door of his car, took out a slip of white paper and a pencil and made some notations. The man then took some bank notes from his pocket and counted them into appellant's hand. As the man went back toward the bar, he was met by a second man who said: "Did you get it in?" The other man replied: "Yep". The first man said: "970?" to which the second man replied: "Sure, that's the number we had a hunch on." The man re-entered the bar and appellant went south on Light Street. He double-parked again near Conway and entered various places of business in the immediate vicinity. On leaving two of these places, he was seen putting a slip of white paper in his coat pocket. He was also approached by various men handling freight in the neighborhood. They were taking bank notes from their pockets and handing them to appellant, who then took from his pocket a slip of white paper and made notes on it. At 11:55, he went south on Light Street and over into Anne Arundel County. In about fifteen minutes, he came back from Anne Arundel County and re-entered the city. This was about 12:55 P.M. On January 3, appellant did the same sort of thing at the bar on Water Street and at various places of business in the southern part of the city, using the white paper

and pencil. On January 10, 1951, the same sort of thing happened. On these facts, the judge to whom the affidavit was presented determined that probable cause existed to think that the appellant was a collector for a numbers game, and a warrant was issued authorizing the search of the automobile and the arrest of the appellant. Without any further discussion of the matter, it is clear to this court that the facts set out were sufficient to justify the issuance of the warrant.

The evidence found in the automobile on January 12, 1951, when appellant was arrested, included two papers, one bearing the caption "Mon. Jan. 1st", and the other bearing the heading "Mon. Jan. 8th". On these papers, various names and numbers appeared, the first one in each case being that of the appellant, the second being that of "Manny", who was presumably the proprietor of "Manny Berg's Turf Bar" where the appellant was first seen, and the third, "Hobbs". There was no other evidence offered to prove that either of these papers was in the possession of the appellant on the dates mentioned, and the appellant contends that the fact that they were found in his possession on January 12, is not sufficient to show that they were actually in his possession on the other dates. Two of his convictions were for having such papers in his possession on these two dates. Winning "numbers" are determined from certain figures in the amounts paid on the winners at certain horse races held at a certain track on a certain day. The slips containing the numbers and amounts paid by individuals must therefore be prepared prior to the time of the races on the day in question, and, of course, they would carry that date. The sheets dated January 1 and January 8 must have been written by appellant on those dates, and therefore he must have had them in his possession on those dates. Why he kept them is not important, but it is probable he had them on January 12 because some of the parties whose bets were listed had not been paid off, or because he wanted to keep a record of the bets made on those dates.

When we review the evidence in a criminal case tried by a court sitting without a jury, we will set aside the verdict only when it is clearly erroneous. *Lambert v State*, 196 Md. 57, 68, 75 A. 2d 327, 332. *Edwards v State*, 198 Md. 132, 151, 81 A. 2d 631, 639, an opinion filed in the latter case on October 5, 1951, on motion for re-argument. 198 Md. 152, 83 A. 2d 578. In this case, we cannot say that the verdict of guilty by the trial court complained of were clearly erroneous, as the evidence was sufficient to support a reasonable inference of appellant's guilt. The judgments will, therefore, be affirmed.

*Judgments affirmed with costs.*